**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

CoStar Group, Inc. and CoStar Realty
Information, Inc.,

                Plaintiffs,

        v.

Sandbox Real Estate and Development LLC and
John Choi,

              Defendants.

Civil Action No. _____

**COMPLAINT AND
DEMAND FOR JURY
TRIAL**

1.      Plaintiffs COSTAR GROUP, INC. and COSTAR REALTY INFORMATION,

INC. (together, "CoStar"), with their principal place of business at 1331 L Street, N.W.,

Washington, District of Columbia, 2005, by and through their attorneys, Pashman Stein Walder

Hayden, P.C. and Williams & Connolly LLP, as and for their Complaint and Demand for Jury

Trial against SANDBOX REAL ESTATE AND DEVELOPMENT, LLC, with its principal

place of business at 100 Alexander Way, Suite 401, Edgewater, New Jersey, and JOHN CHOI,

an individual with a street address of 115 River Road, Suite 103, Edgewater, New Jersey 07020,

allege as follows:

**INTRODUCTION**

2.      CoStar Group, a public company, and CoStar Realty Information, its wholly

owned subsidiary, together constitute the nation's leading provider of commercial real estate

information, and operate the most comprehensive commercial real estate information database

available in the world.

3.      CoStar brings this case against Sandbox Real Estate and Choi (together,

"Defendants") to redress unauthorized access to, and use of, CoStar's subscription database, and

to protect CoStar's intellectual property.  Choi, the President of Sandbox Real Estate, engaged in fraud in order to steal access to CoStar's database and swipe its proprietary information for profit.

4.    CoStar contacted Defendants prior to filing this lawsuit in an effort to resolve this matter without litigation, but was rebuffed.  In fact, Choi informed CoStar that he had no reason to steal from the company because he was an authorized user.  Not so.

5.    Sandbox Real Estate is a commercial real estate agency located in Edgewater, New Jersey.

6.    As the nation's leading provider of commercial real estate information, CoStar necessarily maintains comprehensive information on a variety of property types throughout the country, including New Jersey.  Such information, along with information about millions of other commercial properties across the United States, is maintained in CoStar's subscription database.   Access to the database is made available to subscribers for a monthly fee.

7.    Rather than pay to subscribe to CoStar's services, Choi decided to steal them. While he was an employee of Alexander Anderson Real Estate Group—another real estate company—Choi obtained the usernames and passwords of the only two Alexander Anderson employees licensed to access and use CoStar's database.  Choi then surreptitiously used those credentials to infiltrate the database.  Once inside the CoStar database, Choi accessed and downloaded content pertaining to numerous properties.

8.    Choi's misconduct continued after he left Alexander Anderson and dedicated his efforts to Sandbox Real Estate.  At Sandbox Real Estate, he continued to use the credentials of Alexander Anderson employees to access CoStar's database, again viewing and downloading content about numerous properties, including CoStar's copyrighted photographs.  On

information and belief, Choi has grown Sandbox Real Estate, in part, on information pilfered from CoStar's database.

9.      Choi used the content he unlawfully procured from CoStar's database for his own benefit and, likely, for his business purposes as well.  Indeed, given Choi's profession, the information in CoStar's database would permit him to generate profits for himself and service actual or potential clients.

10.     Choi's free-riding on authorized users' licenses caused financial harm to CoStar and to its paying subscribers.

11.     Choi violated state and federal statutes precluding individuals from unlawfully accessing and using CoStar's database, and infringed copyrighted works by printing and downloading copyrighted content.  In addition to these statutory violations, Choi engaged in common-law fraud and breached the Terms of Use for CoStar's database.

12.      On information and belief, Sandbox Real Estate was aware of, encouraged, and facilitated Choi's unlawful conduct and benefited from that conduct.

13.     As a consequence of Defendants' unlawful actions, CoStar is entitled to damages and/or disgorgement of Defendants' profits derived from their misconduct, as well as injunctive relief to prevent continued irreparable harm to its business.

*  *  *  *  *

14.     CoStar employs more than three thousand people in the United States and, as a result of their diligent efforts—and the investment of nearly five billion dollars over the last thirty-plus years—CoStar has developed the most comprehensive commercial real estate information database available in the world.

15.     This subscription database contains copyrighted photographs of, and

3

professionally researched information about, commercial properties across the country. The database has well over a hundred thousand subscribers, including all of the leading commercial real estate brokerages in the United States, as well as a significant number of smaller brokerages, property owners, banks, retailers, real estate investment trusts, and other professionals. The subscription database also counts a number of federal, state, and local government entities and agencies as its users.

16.     CoStar generates and updates the database's content at a cost of over $600 million each year. Nearly thirteen thousand CoStar researchers have contributed to the subscription database since its creation, adding information about nearly five million properties, taking over twelve million photographs, and driving and flying over two million miles per year. Researchers collect this information through various means, including through in-person site inspections and targeted calls to individual commercial real estate owners, developers and brokers.

17.     While the subscription database provides exceptional benefits to CoStar's paying customers, it also has a positive impact on consumer welfare in the larger commercial real estate ecosystem. CoStar's subscription database provides greater transparency in the form of readily available, professionally researched, and regularly updated commercial real estate information. The existence of this information has made traditional commercial real estate transactions more efficient, and has also facilitated a more diverse range of commercial real estate deals. The net result is greater liquidity and significantly mitigated risk in one of the world's most valuable and important asset classes: commercial real estate.

18.     The important role that CoStar plays in the commercial real estate market is demonstrated by the extent to which its users interact with the service. Each day, users conduct nearly nine million searches for commercial real estate on CoStar products, including its

subscription database.  CoStar estimates that its products play a part in supporting one trillion dollars of commercial real estate leases, sales, and mortgage originations in the United States each year.

19.      CoStar licenses its subscription database content for a monthly fee.  Those fees, which vary according to the scope of access a user seeks, generate significant revenue for CoStar and enable it to employ thousands of people for, and invest billions in, research and product enhancements.

20.      While the marginal cost of any single unauthorized access may be limited, in the aggregate stealing access to CoStar presents a major threat to the ongoing viability of CoStar's products.

21.      Because the contents of the subscription database—including CoStar's photographs and professionally researched data—are central to its business, CoStar regularly registers its photographs with the United States Copyright Office and protects its proprietary data both through technological means and contractually-binding agreements to which anyone who accesses its database assents.  For example, CoStar contractually prohibits customers from sharing passwords, and employs password authentication modes that vary according to risk, firewalls, and anti-hacking software to limit access and manipulation of its data.

## PARTIES

22.      CoStar Group is a corporation organized and existing under Delaware law with its principal place of business and corporate office located at 1331 L Street, N.W., Washington, District of Columbia 20005.

23.      CoStar Realty Information is a corporation organized and existing under Delaware law with its principal place of business and corporate office located at 1331 L Street,

N.W., Washington, District of Columbia 20005.  It is a wholly owned subsidiary of CoStar Group.

24.     Sandbox Real Estate was registered in New Jersey as a limited liability company on November 3, 2010.  New Jersey appears to have revoked that registration in June 2014, and, as of September 20, 2018, it does not appear that the company's registration has been reinstated. Sandbox Real Estate's principal place of business is 100 Alexander Way, Suite 401, Edgewater, New Jersey 07020.  CoStar has been unable to identify Sandbox Real Estate's members.

25.     Choi is domiciled in New Jersey and, on information and belief, resides at 115 River Road, Suite 103, Edgewater, New Jersey 07020.  Choi was employed by Alexander Anderson Real Estate Group until March 6, 2018.  He represents that he is the President of Sandbox Real Estate.

**JURISDICTION AND VENUE**

26.     The Court has federal question jurisdiction over this action under 28 U.S.C. § 1331 because this action alleges violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Copyright Act, 17 U.S.C. §101 *et seq.*  The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because these claims arise from a common nucleus of operative facts.

27.     The Court has personal jurisdiction over Choi because, among other reasons, he resides in New Jersey and CoStar's claims arise from and relate to business he transacted in New Jersey.  The Court has personal jurisdiction over Sandbox Real Estate because, among other reasons, its principal place of business is in New Jersey and CoStar's claims arise from and relate to business it transacted in New Jersey.

28.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and 1400(a)

because Defendants reside in this judicial district and a substantial part of the events or omissions giving rise to this action occurred in this judicial district.

## FACTUAL ALLEGATIONS

**I.     Choi Knowingly and Intentionally Gained Unauthorized Access to CoStar's Subscription Database by Acquiring the Credentials of Two CoStar Subscribers.**

29.     One of the many companies that subscribes to CoStar's database is Alexander Anderson Real Estate Group.  Two of its employees, Brendan Quinn and Eric Anderson, are authorized to access and use CoStar's database.  Although Alexander Anderson formerly employed Choi, Choi has never been authorized to access CoStar's database under Alexander Anderson's license agreement (or any other license agreement).

30.     That has not stopped Choi from taking advantage of CoStar's database.  CoStar has gathered a wealth of evidence establishing that during and after his employment with Alexander Anderson, Choi used Quinn's and Anderson's credentials to access CoStar's database without authorization, and to review and download CoStar's proprietary content, including its copyrighted photographs.

31.     Before Choi left Alexander Anderson's employ, Quinn's and Anderson's credentials were used to log into CoStar's database from multiple devices associated with multiple IP addresses.  Some of the devices and IP addresses were affiliated with Quinn and Anderson and some of the devices and IP addresses were affiliated with Choi.  In fact, Quinn's and Anderson's CoStar search histories reveal a folder labeled "JC"—Choi's initials.

32.     Moreover, the electronic record shows that on several occasions, a device associated with Choi would attempt to log into CoStar's database from an IP address associated with Choi at the same time a device associated with Quinn or Anderson was already logged into CoStar from an IP addressed associated with Quinn or Anderson.  This simultaneous login and

product usage by two different devices forecloses any innocent explanation of Choi's conduct.

33.     Put simply, while an Alexander Anderson employee, Choi free rode on Quinn's and Anderson's CoStar credentials to himself access CoStar's database.

34.     Choi doubled-down on his unlawful conduct when he left Alexander Anderson and went to work for Sandbox Real Estate in early March 2018.  Although Choi no longer was under the same roof as Quinn and Anderson, that did not interrupt his efforts to purloin CoStar access.

35.     Choi gained access to CoStar's subscription database no fewer than 37 times after he departed Alexander Anderson, and possibly more, by falsely representing that he was either Quinn or Anderson, both authorized users.

36.     Every individual who seeks to access CoStar's database is directed to "Log In with *your* current CoStar username and password."  (Emphasis added.)  In response to this prompt, Choi repeatedly provided a username and password that did not belong to him, but rather belonged to an actual authorized user, thereby falsely representing to CoStar that he was authorized to access the database.  The specific dates and times of Choi's fraudulent misrepresentations following his departure from Alexander Anderson are set forth in the attached Exhibit A.

37.     Every individual who seeks access to CoStar's database also acknowledges that by clicking "Log In," he or she accepts CoStar's Terms of Use (attached as Exhibit B).  CoStar provides a link to its Terms of Use on the Log In page for ease of reference.

38.     In large and clear text at the top of CoStar's Terms of Use is the following disclaimer:  "YOUR USE OF THIS WEB SITE CONSTITUTES YOUR AGREEMENT TO BE BOUND BY THESE TERMS AND CONDITIONS OF USE."  (Ex. B.)

39.      Individuals using CoStar's database further "agree to be legally bound by the terms and conditions" and that the terms and conditions "constitute a legal contract between you and CoStar."  (Ex. B.)  Users of the database further acknowledge that they have "the right, power and authority to agree to and be bound by the[] Terms of Use" and that if they "do not agree to the Terms of Use, or if [they] do not have the right, power, and authority to agree to and be bound by the[] Terms of Use, [they] may not use the Site."  (Ex. B.)

40.      The Terms of Use further provide:

Those portions of the Product[1] that may be accessed by the general public and that do not require any use of Passcodes (as defined below) or facial recognition authentication are referred to as the 'Non-Passcode Protected Product.' *Those portions of the Product that require use of Passcodes ... are available only to individuals or entities ('CoStar Clients'), or those acting through them, who enter into a License Agreement (as defined below) with CoStar that authorizes access to such CoStar service are referred to as the 'Passcode Protected Product.'*

\* \* \* \* \*

Only Authorized Users (defined below) for a Passcode Protected Product may access such product and they may access it solely using the user name, password (collectively, the 'Passcodes') [registered with CoStar] ….

\* \* \* \* \*

An 'Authorized User' is defined as an individual (a) employed by a CoStar Client or an Exclusive Contractor (as defined below) of a CoStar Client at a site identified in the License Agreement, and (b) who is specified in the License Agreement as a user of a specific Passcode Protected Product and represented by the Client to be an employee or Exclusive Contractor of the Client.

(Ex. B (emphasis added).)

41.      The Terms of Use also prohibit certain types of conduct including:

Access[ing] any portion of a Passcode Protected Product unless you are an

---

[1] CoStar defines "Product" as including its "Site, Content, Database, Information, Software and any portion of the foregoing, including any derivatives, adaptations, successors, updates or modifications provided thereto and any information derived from the use of the Database, including as a result of the verification of any portion of the Information."  (Ex. B.)

Authorized User for such Passcode Protected Product using the Passcodes assigned to you by CoStar to access the components and services of the Passcode Protected Product that your License Agreement authorizes you to access, subject to the terms contained therein and in these Terms of Use.

(Ex. B.)

42.     The Terms of Use emphasize the proprietary nature of the information contained

in CoStar's database:

The information, data, text, software, photographs, images, graphics, organization, layout, design, and other content contained on or provided through this Site (collectively, the 'Content') are proprietary to CoStar and its licensors, and are protected by copyright and other Canadian and international intellectual property rights, laws and treaties.

[User] acknowledge[s] that the Software, Database, Content, Information, Passcode Protected Product, Non-Passcode Protected Product, and Product constitute the valuable property and confidential copyrighted information of CoStar and its licensors ….

(Ex. B.)

43.     Because CoStar's database contains valuable proprietary content, the Terms of

Use prohibit users from copying or exporting any portion of the information contained therein:

[User] shall not ... [s]tore, copy or export any portion of the Product into any database or other software, except as expressly set forth in the Permitted Uses above.

(Ex. B.)

44.     When Choi logged into CoStar's database, he was not (and knew that he was not)

an Authorized User; yet he accessed a Passcode Protected Product anyway.  Choi did not simply

access and use CoStar, however, he also stored, copied, and exported portions of the Product to

his own systems, including CoStar's copyrighted photographs, for his own benefit, and for the

benefit of his clients and Sandbox Real Estate.

45.     The infringed photographs are identified in the attached Exhibit C.  CoStar owns

the exclusive rights in each of the infringed photographs detailed in Exhibit C and has validly registered each of the photographs with the United States Copyright Office either before the acts of infringement or within three months of its first publication. Choi copied, printed, distributed, or republished each of these copyrighted photographs without authorization.

46.     Since departing Alexander Anderson, Choi has created property reports containing at least five CoStar-copyrighted photographs. He created those reports on May 23, 2018 and May 31, 2018—two days on which the electronic record establishes that a device affiliated with Choi logged into CoStar using Anderson's credentials. The photographs, along with their registration information, are identified in Exhibit C.

47.     Choi represents that his real estate "knowledge and skill sets" run the gamut "[f]rom the rental of a studio to the disposition of a commercial property,"[2] and thus it is no surprise that the property reports he created—and thus the photographs he infringed—reflect, among other things, multifamily homes:

212 Ferry Street
Newark, New Jersey 07105

10 Adams Street
Newark, New Jersey 07105

as well as industrial space:

---

[2] *Available at* https://www.zillow.com/profile/johnchoiusa/ (last accessed Oct. 3, 2018).

274–280 Lafayette Street
Newark, New Jersey 07105



48.     Not only did Choi know he was accessing CoStar's information without authorization, he also was aware that he was stealing copyright-protected content.  The Terms of Use specifically alert individuals who log into the database that information contained in the database is protected by copyright laws.  CoStar is also well known in the industry for taking steps to protect its copyrighted images.  On information and belief, both Choi and Sandbox Real Estate profited from their infringement.

49.     On June 6, 2018, CoStar contacted Defendants and told them to cease and desist any and all unauthorized use of CoStar's database.  CoStar also afforded Defendants the opportunity to provide an explanation for their misconduct.  Although Choi informed CoStar that he had no reason to steal from the company because he was an authorized user, Choi is not and has never been an authorized user of CoStar's database.

**II.    At Great Effort and Expense, CoStar Endeavors to Protect Its Intellectual Property From Unauthorized Users Like Choi.**

50.     Due in part to the type of brazen misconduct at issue here, CoStar has taken extensive measures to protect its intellectual property and to prevent unauthorized access to its

12

products.

51.    CoStar carefully structures its license agreements to ensure that all licensees have a clear duty to maintain the confidentiality of CoStar's proprietary information.

52.    Access to CoStar's subscription database is also password protected.  CoStar requires each licensed user to maintain his or her own individual password, and prohibits them from sharing these credentials with any other individual.  And it has created its own two-factor authentication system for logging into the CoStar database.

53.    CoStar also employs a number of third-party products to protect against unauthorized access including, but not limited to, firewalls, anti-virus programs, and anti-malware programs.

54.    CoStar is constantly implementing new security procedures to protect its most valuable resources—its professionally-researched commercial real estate information—at a significant cost.  Efforts (like Defendants') to circumvent these technological safeguards significantly increase these costs.

55.    In addition to its state-of-the-art anti-piracy technology, CoStar operates its own anti-piracy program which includes monitoring suspicious activity and unauthorized uses of its subscription database.  That program—which caught the misconduct at issue—is also costly to administer.

56.    CoStar has taken such extensive measures to protect its intellectual property because it derives significant economic value from the fact that the information in its database is not generally or readily ascertainable.

57.    The benefits that CoStar's products provide to its customers and the market at large are a direct result of the company's efforts—undertaken over decades at a cost of billions

of dollars—to research, collect, and create data and images.  The protection of proprietary data and copyrighted images—and CoStar's ability to vindicate its rights in that intellectual property—is therefore critically important.

### FIRST CLAIM FOR RELIEF
**Computer Fraud and Abuse Act, 18 U.S.C. § 1030**
**(Against Defendants)**

58.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

59.     CoStar's computers and servers, located in the United States, are involved in interstate and foreign commerce and communication.

60.     CoStar licenses its subscription database content for a monthly fee.  CoStar controls access to its database by requiring its customers to obtain licenses for each individual employee who intends to access the database.  CoStar prohibits those individuals from sharing their unique credentials with any other person.

61.     In addition, every user of the subscription database or any other CoStar product is subject to CoStar's binding Terms of Use.

62.     Choi knowingly, and with intent to defraud, gained unauthorized access to CoStar's computers and servers for the purpose of extracting CoStar's proprietary data, in violation of CoStar's binding Terms of Use.

63.     Choi knew that CoStar required customers to purchase a subscription in order to access CoStar's proprietary database.  Choi nevertheless gained unauthorized access to CoStar's database using login credentials belonging to two authorized users.  Choi knew that he was not authorized to access CoStar's subscription database using credentials that did not belong to him.

64.     Choi's repeated unauthorized access of CoStar's computers and servers allowed

14

Choi to access, obtain, and use CoStar's contractually protected proprietary information involving interstate communication, in violation of 18 U.S.C. § 1030.

65.     Sandbox Real Estate is vicariously liable for Choi's unauthorized access of CoStar's computers and servers and use of CoStar's contractually protected proprietary information involving interstate communication.  Sandbox Real Estate has the right and ability to supervise and control Choi's unlawful activities and, at all relevant times, derived a direct financial benefit from Choi's unlawful activities.

66.     CoStar has suffered over $5,000 worth of damages and losses over a one-year period, in an amount to be proven at trial.  Choi's unauthorized access consumed time and money spent identifying, investigating, and attempting to block and otherwise respond to Choi's unauthorized access, as described throughout this Complaint.  Further, Choi's unauthorized access has impaired and corrupted CoStar's efforts to measure and analyze legitimate subscriber traffic.  Choi's unlawful conduct undermined the soundness and therefore the value of those data and analyses, which are used for multiple business purposes including search-engine optimization and search-engine marketing.

67.     CoStar has suffered and will continue to suffer independent, irreparable harm as a result of Choi's continued access to its computers and servers without authorization, which entitles CoStar to injunctive relief.

## SECOND CLAIM FOR RELIEF
### New Jersey Computer Related Offenses Act, New Jersey Statute § 2A:38A-3
### (Against Defendants)

68.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

69.     The New Jersey Computer Related Offenses Act provides a remedy to "[a] person

or enterprise damaged in business or property as a result of "the purposeful or knowing, and unauthorized … taking … of any data, database, computer program, computer software, or computer equipment existing internally or externally to a computer, computer system, or computer network," or "the purposeful or knowing, and unauthorized accessing or attempt to access any computer, computer system, or computer network," or "the purposeful or knowing, accessing and reckless altering, damaging, destroying or obtaining of any data, database, computer, computer program, computer software, computer equipment, computer system, or computer network."  N.J. Stat. Ann. § 2A:38A-3.  It provides those entities with a private right of action to protect their computer data and systems.  *Id.*

70.     Choi has violated § 2A:38A-3(a) by purposefully or knowingly accessing and without permission taking CoStar's data, computer, computer system, or computer network and causing damage to CoStar's business.

71.     Choi has violated § 2A:38A-3(c) by purposefully or knowingly accessing and without permission using CoStar's data, computer, computer system, or computer network and causing damage to CoStar's business.

72.     Choi has violated § 2A:38A-3(e) by purposefully or knowingly accessing and recklessly obtaining CoStar's data, computer, computer system, or computer network and causing damage to CoStar's business.

73.     Sandbox Real Estate is vicariously liable for Choi's unauthorized access to CoStar's computers and servers and use of CoStar's contractually protected proprietary information.  Sandbox Real Estate has the right and ability to supervise and control Choi's unlawful activities and, at all relevant times, derived a direct financial benefit from Choi's unlawful activities.

74.     Choi had knowledge of his unlawful conduct by, among other things, acquiring and using the credentials of two CoStar subscribers to gain access to and use CoStar's database.

75.     As a direct and proximate result of Choi's unlawful conduct within the meaning of § 2A:38A-3, Choi has caused damage to CoStar, as described herein and including requiring CoStar to take extraordinary actions to monitor its website, in an amount to be proven at trial.

76.     Pursuant to § 2A:38A-3, CoStar is entitled to compensatory damages.

77.     Pursuant to § 2A:38A-3 and § 2A:15-5.12, Choi has acted with actual malice or wanton and willful disregard toward CoStar, entitling CoStar to an award of punitive damages, attorneys' fees, and costs of investigation and litigation.

### THIRD CLAIM FOR RELIEF
**Copyright Infringement, 17 U.S.C. § 101 *et seq.*
(Against Defendants)**

78.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

79.     Each of CoStar's photographs constitutes an original work of authorship and copyrightable subject matter under the laws of the United States.

80.     CoStar owns or has exclusive rights to all rights, title, and interest in and to the photographs.

81.     On information and belief, Choi has copied and/or reproduced CoStar-copyrighted photographs—including without limitation those copyrighted works identified in the attached Exhibit C—without the consent or authority of CoStar, thereby infringing CoStar's copyrights.

82.     CoStar owns the exclusive rights in each of the photographs detailed in Exhibit C and has validly registered each of the photographs with the United States Copyright Office either

before Defendants' acts of infringement or within three months of its first publication.  The registration number for each photograph is set forth in Exhibit C.

83.      Choi's copies and/or reproductions are identical and/or substantially similar to CoStar's photographs.

84.      Choi is directly liable for these acts of infringement in violation of 17 U.S.C. §§ 106 and 501.

85.      Sandbox Real Estate is secondarily liable for Choi's infringing acts.

86.      On information and belief, Sandbox Real Estate is liable for contributory copyright infringement because it induced, caused, and/or materially contributed to Choi's infringing activities and had knowledge, or reason to know, of Choi's infringing activities.

87.      On information and belief, Sandbox Real Estate is vicariously liable for Choi's infringing activities.  Sandbox Real Estate has and had the right and ability to supervise and control Choi's infringing activities and, at all relevant times, derived a direct financial benefit from Choi's infringement of CoStar's copyrights.

88.      The infringement of CoStar's rights in each of its copyrighted photographs constitutes a separate and distinct act of infringement.

89.      Choi's acts of infringement have been willful, intentional, purposeful, and in disregard of CoStar's rights under the Copyright Act.  Choi knew his acts were infringing and intentionally or recklessly disregarded the law by his conduct.

90.      CoStar did not authorize Choi's acts.

91.      CoStar believes that additional instances of Choi's infringement of its copyrighted photographs will be revealed during the discovery process.

92.      As a result of Choi's willful copyright infringement and Sandbox Real Estate's

secondary liability, CoStar has been and will continue to be damaged as a direct and proximate result of the infringing acts set forth above, and Defendants have been unjustly enriched by their unlawful infringement of CoStar's copyrighted photographs.

93.     CoStar is entitled to damages as well as Defendants' profits under 17 U.S.C. § 504(b) in an amount to be proven at trial.

94.     Alternatively, CoStar is entitled to the maximum statutory damages available under 17 U.S.C. § 504(c) in the amount of $150,000 for the infringement of each CoStar copyrighted work or for such other amount as may be proper under 17 U.S.C. § 504(c).

95.     CoStar is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

96.     Choi's infringement of CoStar's exclusive rights and Sandbox Real Estate's related conduct has caused CoStar irreparable injury.  Unless restrained and enjoined, Defendants will continue to infringe CoStar's copyrighted works.  As CoStar's remedies at law are inadequate, CoStar is also entitled to injunctive relief as provided by 17 U.S.C. § 502 and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

## FOURTH CLAIM FOR RELIEF
### Fraud
### (Against Choi)

97.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

98.     Choi repeatedly logged into CoStar's subscription database.  By doing so, Choi represented that he accepted CoStar's Terms of Use.

99.     By accepting CoStar's Terms of Use, Choi represented to CoStar he would not access any portion of a Passcode Protected Product unless he was an Authorized User for such

Passcode Protected Product (as those terms are defined in the Terms of Use).

100.    Choi's representations to CoStar that he would abide by its Terms of Use were false.  Every time Choi accessed CoStar's subscription database and every time he entered the credentials of an Authorized User and clicked "Log In," he intended to, and did, violate the Terms of Use.

101.    By using the credentials of an Authorized User, Choi concealed from CoStar his true intent to violate the Terms of Use, and also misrepresented and hid his identity when gaining access to and using CoStar's subscription database.

102.    CoStar relied on Choi's representations and omissions by providing the information and data available on its subscription database to Choi, which included allowing Choi to view and download information on various properties.

103.    Each of Choi's fraudulent representations and omissions is set forth in Exhibit A.

104.    As a result of this fraudulent misconduct, CoStar has been damaged in an amount to be proven at trial.

### FIFTH CLAIM FOR RELIEF
**Breach of Contract**
**(Against Choi—In the Alternative to the Fourth Claim for Relief)**

105.    CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

106.    Every time Choi logged into CoStar's database, Choi agreed to be bound by CoStar's Terms of Use.

107.    The Terms of Use provided that only individuals who entered into a License Agreement with CoStar—and thus were Authorized Users—could access CoStar's Passcode Protected Product (as those terms are defined in the Terms of Use).

108.     The Terms of Use prohibit anyone who is not an Authorized User from accessing a Passcode Protected Product.

109.     The Terms of Use also prohibit anyone who is not an Authorized User from storing, copying or exporting any portion of the Product into any database or other software.

110.     CoStar has performed all of the conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of CoStar's Terms of Use.

111.     Choi breached CoStar's Terms of Use by, among other things, accessing CoStar's Passcode Protected Product and storing, copying, or exporting any portion of the Product into any database or other software when he was not an Authorized User.

112.     As a result of Choi's breach of CoStar's Terms of Use, Choi has caused damage to CoStar in an amount to be determined at trial.

**SIXTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(Against Choi—in the Alternative to the Fourth and Fifth Claims for Relief)**

113.     CoStar repeats and realleges each and every allegation set forth above, and incorporates them herein by reference.

114.     CoStar expects that any user of its database is an Authorized User (as that term is defined in the Terms of Use) who pays CoStar's subscription fees to access its database.

115.     Each time Choi logged into and used the CoStar database, he received a benefit for himself and for Sandbox Real Estate.

116.     By accessing the CoStar database, Defendants received the benefit of a CoStar subscription without paying CoStar for that access.

117.     The retention of that benefit without payment would be unjust.

118.     Had CoStar known the true facts, it would have expected remuneration from

21

Defendants at the time the benefit was conferred.  Choi has been unjustly enriched at the expense of CoStar, and as a result, CoStar is entitled to an award reflecting the value of the services he obtained and the benefits he received from those services.

## PRAYER FOR RELIEF

WHEREFORE, CoStar prays for judgment against Defendants as follows:

A.    For an award pursuant to 18 U.S.C. § 1030(g) of compensatory damages;

B.    For an award pursuant to New Jersey Statute § 2A:38A-3 of compensatory damages;

C.    For an award pursuant to 17 U.S.C. § 504(b) of compensatory damages and Defendants' profits or, as CoStar may elect at any time before final judgment is rendered, statutory damages pursuant to 17 U.S.C. § 504(c);

D.    For an award of damages arising from Choi's breaches of CoStar's Terms of Use, and the misappropriation of CoStar material as a result of those breaches; or, in the alternative, for an award of damages and disgorgement arising from Choi's materially false representations and the unauthorized access to CoStar's proprietary database that resulted from such misrepresentations; or, in the alternative, for an award reflecting the value of the services Choi obtained and the benefits he received from those services;

E.    For a permanent injunction (1) barring Defendants' continued unauthorized access to CoStar's computers and servers; (2) barring Defendants from sharing or distributing any information acquired from CoStar's database with any other organization or individual; and (3) ordering Defendants to purge all CoStar content from any computers, databases, or servers that they use or maintain;

F.    For further permanent injunctive relief as deemed necessary by the Court;

G.   For an award of CoStar's costs, including its reasonable attorneys' fees and disbursements of counsel, as permitted by law;

H.   For prejudgment and post-judgment interest according to law;

I.   For exemplary damages to the extent available; and

J.   For such further and additional relief as the Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

CoStar demands a trial by jury on all issues properly tried to a jury.

Dated:  October 3, 2018                    Respectfully submitted,


                                           By: /s/ Justin P. Walder
                                           Justin P. Walder
                                           Brendan M. Walsh
                                           PASHMAN, STEIN, WALDER, HAYDEN P.C.
                                           Court Plaza South
                                           21 Main Street, Suite 200
                                           Hackensack, NJ 07601
                                           Telephone:  (201) 488-8200
                                           Facsimile:  (201) 488-5556
                                           jpwalder@pashmanstein.com
                                           bwalsh@pashmanstein.com

                                           Nicholas J. Boyle (*pro hac vice* forthcoming)
                                           David R.J. Riskin (*pro hac vice* forthcoming)
                                           Tamara A. Rubb (*pro hac vice* forthcoming)
                                           WILLIAMS & CONNOLLY LLP
                                           725 12th Street, N.W.
                                           Washington, DC 20005
                                           Telephone:  (202) 434-5000
                                           Facsimile:  (202) 434-5029
                                           nboyle@wc.com
                                           driskin@wc.com
                                           trubb@wc.com

                                           *Attorneys for CoStar Group, Inc. and CoStar Realty*
                                           *Information, Inc.*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

The undersigned hereby certifies that the matter in controversy is not the subject of any

other action in any court, a pending arbitration proceeding, or a pending administrative

proceeding, and that no other action or proceeding is contemplated.

I certify under penalty of perjury that the foregoing is true and correct.

By: /s/ Justin P. Walder
Justin P. Walder
Brendan M. Walsh
PASHMAN, STEIN, WALDER, HAYDEN P.C.
Court Plaza South
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone:  (201) 488-8200
Facsimile:  (201) 488-5556
jpwalder@pashmanstein.com
bwalsh@pashmanstein.com

Dated:  October 3, 2018
Hackensack, New Jersey